UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SEAN MCENDREE,

        Plaintiff,

      v.

RASH CURTIS & ASSOCIATES,

        Defendant.

No. 2:10-cv-01079-MCE-JFM

**MEMORANDUM AND ORDER**

----oo0oo----

Through the present action, Plaintiff Sean McEndree ("McEndree" or "Plaintiff") alleges that Defendant Rash Curtis & Associates, a debt collection agency, violated state and federal law by its actions in attempting to collect a $450.00 unpaid medical bill allegedly owed by Plaintiff.  Plaintiff also asserts a common law cause of action for invasion of privacy.  Defendant Rash Curtis & Associates ("Rash Curtis" or "Defendant") now moves, pursuant to Federal Rule of Civil Procedure 56, for summary adjudication as to certain claims submitted by Plaintiff on grounds that said claims are either legally deficient, factually lacking, or both.

1

As set forth below, Defendant's Motion will be granted in part and denied in part.

**BACKGROUND**

According to Rash Curtis, on or about September 6, 2009, it received a referral from the Midtown Primary Care Association for collection of a $450.00 bill owed by Plaintiff.  Defendant claims it sent an initial letter to Defendant on or about September 8, 2009, as required by the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").  That letter would have included information about the debt and how to satisfy the obligation short of litigation.

In addition to notifying Plaintiff by mail, Rash Curtis also attempted to call him by using a cell phone number and other telephone numbers that Rash Curtis believed were associated with Plaintiff.  Decl. of Bob Keith, ¶¶ 1-12.  One of those numbers turned out to be a work number for Plaintiff's girlfriend (and now wife), Jherica Hartwell.

Rash Curtis maintains an electronic record of its debt collection contacts for all accounts.  In this particular case, those logs indicate that on September 18, 2009, a Rash Curtis employee spoke to Ms. Hartwell using what it later learned was her work number.  According to Rash Curtis, Hartwell identified herself as Plaintiff's wife, explained that insurance was supposed to have paid the bill, and told Rash Curtis she had set up a payment plan to make small payments on the account.  Id. at ¶ 12.

1    Rash Curtis also states that it obtained an Experian Online

2   Credit Report on September 18, 2009, the same day it spoke to

3   Ms. Hartwell.  The Experian report confirmed that Ms. Hartwell

4   was indeed Plaintiff's wife.  A copy of Experian's report is

5   attached as Exhibit C to Bob Keith's Declaration.

6    Jherica Hartwell, for her part, denies ever telling Rash

7   Curtis that she was McEndree's wife during her September 18,

8   2009, conversation with Rash Curtis.  Hartwell Dep., 37:18-38:3.

9   It is undisputed that Plaintiff and Hartwell were not married at

10   the time of the events underlying this lawsuit (although living

11   together as a couple, together with their child, they did not

12   marry until 2011).  Hartwell does, however, recall that she

13   discussed the potential of a payment plan.  She confirmed that

14   the Rash Curtis employee did not release any specific debt

15   information to her at that time.  Id. at 39:17-19.

16    Rash Curtis' electronic records show that just minutes after

17   speaking to Hartwell on September 18, 2009, Plaintiff himself

18   called to complain that Hartwell "had nothing to do with the

19   debt."  Rash Curtis claims Plaintiff started cursing and hung up

20   when its employee told Plaintiff that Hartwell had identified

21   herself as his wife.  Keith Decl., ¶ 13.  Rash Curtis denies that

22   Plaintiff informed its employee that he and Hartwell were not

23   married at the time of this conversation.  Id.

24    At deposition, Plaintiff states he "believes" he told Rash

25   Curtis to stop calling Jherica Hartwell.

26   ///

27   ///

28   ///

3

Pl.'s Dep., 34:5-7.  The declaration submitted by Plaintiff in opposition to the present motion is more emphatic in stating that he told Rash Curtis "not to call [Hartwell] because she had nothing to do with this debt and that she was not [his] wife." Pl.'s Decl., ¶ 5.

It appears that Jherica Hartwell had a second conversation with Rash Curtis personnel on March 17, 2010.  Hartwell claims that during that conversation the employee did disclose specific information concerning Plaintiff's debt.  See Hartwell Dep., 39:17-40:4.  During that conversation Ms. Hartwell informed Rash Curtis that she was not Plaintiff's spouse, but only his girlfriend.  Keith Decl., ¶ 15.  According to Rash Curtis, after receiving that information it removed Ms. Hartwell's number from its computer system to ensure that she was not called again. There is no evidence that any calls were placed to her thereafter.

It is undisputed that the Rash Curtis calls placed to Plaintiff himself were only to his cell phone.  Pl.'s Undisputed Fact ("UF") No. 5  While some of those calls did come while Plaintiff was at work, Plaintiff admitted that Rash Curtis did not know his work schedule, which varied.  Although Plaintiff claims that Rash Curtis called him repeatedly (as many as ten times during the course of one day, March 17, 2010 (see Compl., ¶ 5), Plaintiff conceded that with caller identification, he was able to see that Rash Curtis was calling and could ignore the calls if he chose to do so.  Pl.'s Dep., 34:12-20.

///

///

4

1   With respect to the substance of the calls he received,
2   Plaintiff testified at deposition that he was told that they
3   would "take him to court" if he failed to pay.  Id. at 28:11-13.
4   Plaintiff's deposition also alludes to alleged statements made by
5   Rash Curtis to the effect that it was already in litigation with
6   Plaintiff's employer, Metro PCS, about the debt he owed.  Id. at
7   27:5-14.  Rash Curtis allegedly told Plaintiff that they would
8   take him to court as well in order to collect the unpaid
9   obligation.  Id. at 28:1-5.  Plaintiff also claims that Rash
10  Curtis threatened to garnish his wages.  Pl.'s Decl., ¶ 7.

11  Plaintiff filed the present lawsuit on May 2, 2010.  In
12  addition to alleging federal statutory claims under the FDCPA,
13  Plaintiff asserts corresponding state law claims under the
14  Rosenthal Fair Debt Collection Practices Act, California Civil
15  Code section 1788 et seq., as well as a common law claim for
16  invasion of privacy.

17  On June 15, 2010, about six weeks after the present lawsuit
18  was commenced, Rash Curtis instituted its own lawsuit against
19  Plaintiff to collect the debt Plaintiff owed to the Midtown
20  Primary Care Association.  Rash Curtis ultimately prevailed in
21  that lawsuit and a judgment was entered against Plaintiff on
22  June 17, 2011.  Keith Decl., ¶ 17.
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant partial summary judgment, or summary adjudication on the part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim... may... move... for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

1  Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Rule 56(c)).

2      If the moving party meets its initial responsibility, the

3  burden then shifts to the opposing party to establish that a

4  genuine issue as to any material fact actually does exist.

5  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

6  585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

7  253, 288-89 (1968).

8      In attempting to establish the existence of this factual

9  dispute, the opposing party must tender evidence of specific

10  facts in the form of affidavits, and/or admissible discovery

11  material, in support of its contention that the dispute exists.

12  Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that

13  the fact in contention is material, i.e., a fact that might

14  affect the outcome of the suit under the governing law, and that

15  the dispute is genuine, i.e., the evidence is such that a

16  reasonable jury could return a verdict for the nonmoving party.

17  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52

18  (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper

19  Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,

20  "before the evidence is left to the jury, there is a preliminary

21  question for the judge, not whether there is literally no

22  evidence, but whether there is any upon which a jury could

23  properly proceed to find a verdict for the party producing it,

24  upon whom the onus of proof is imposed."  Anderson, 477 U.S. at

25  251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448,

26  20 L. Ed. 867 (1872)).

27  ///

28  ///

As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more that simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

**A.   Statutory Claims.**

In his Complaint, Plaintiff identifies thirteen different violations of either the FDCPA or the Rosenthal Act, then incorporates those allegations into Count I, for violation of the FDCPA, and Count II, which alleges that Defendant ran afoul of the provisions of the Rosenthal Act.  The present motion seeks summary adjudication as to six of those claims, which will now be addressed.

1

### 1.   Impermissibly Seeking Location Information about Plaintiff from a Third Party.

2

3    The FDCPA, at 15 U.S.C. § 1692b, places parameters on the

4    contacts a debt collector can have with a third party for

5    purposes of obtaining location information about the debtor

6    himself.[1]  Location information is defined as meaning "a

7    consumer's place of abode and his telephone number at such place,

8    or his place of employment."  15 U.S.C. § 1692a(7).  The debt

9    collector for example, in asking how to locate the debtor cannot

10   say that any debt is owed, cannot communicate with the same party

11   more than once under normal circumstances, and cannot disclose in

12   correspondence that the communication relates to the collection

13   of a debt.

14   Here, Plaintiff makes it clear that the only third party

15   contacted by Rash Curtis was his girlfriend, Jherica Hartwell.

16   Pl.'s Dep., 18:19-23.  With respect to Hartwell, there is no

17   evidence that Rash Curtis contacted her in order to obtain

18   location information as to Plaintiff.  To the contrary, Rash

19   Curtis alleges it believed Hartwell to be Plaintiff's spouse, and

20   Hartwell herself does not suggest either by way of her deposition

21   testimony or opposing declaration that there were any queries

22   about Plaintiff's location whatsoever other than a request that

23   Rash Curtis speak with Plaintiff.

24   ///

25   ///

26

----

27
28
[1] The FDCPA uses the term "consumer" in referring to the debtor, and defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).

The contents of both phone conversations identified by Hartwell with Rash Curtis pertained not to how Plaintiff could be reached, but rather about the debt itself, with Hartwell talking about a debt repayment plan during the first conversation, and with Rash Curtis allegedly disclosing information about the debt in the second telephone contact in March of 2010.  Consequently, § 1692b is inapplicable on its face to the circumstances of this matter, and summary adjudication as to Plaintiff's claim under that statute must be granted.

> **2.   Impermissibly Disclosing Information about a Debt to a Third Party.**

Again, because it is undisputed that Jherica Hartwell was the only third party with whom Rash Curtis had any contact about Plaintiff's debt, it is the contents of the communications Rash Curtis had with her that must be analyzed in order to determine whether Rash Curtis can be liable under 15 U.S.C. § 1692c(b) of the FDCPA.  That section prohibits communications with a third party for purposes of collecting a debt, without prior consent of the debtor or absent judicial authorization, except for purposes of obtaining location information pursuant to § 1692b as discussed above.

As used in § 1692c, the term "third party" does not include the debtor's spouse.  See 15 U.S.C. § 1692c(d) ("[f]or the purpose of this section, the term consumer (i.e. debtor) includes the consumer's spouse....").  Contact with a debtor's spouse is consequently not prohibited by the FDCPA.

///

10

1    Rash Curtis argues that it reasonably believed that Jherica
2  Hartwell was married to Plaintiff because she admitted as much at
3  the time of her initial telephone conversation with Rash Curtis
4  on September 18, 2009.  Rash Curtis argues that Hartwell's status
5  in that regard was further reinforced by a credit report obtained
6  that same day which also listed Jherica as Plaintiff's spouse.
7  Defendant argues that it consequently had a good faith belief
8  that Hartwell and Plaintiff were indeed married when it contacted
9  Hartwell.  According to Rash Curtis, when it did find out that
10 Plaintiff and Hartwell were not husband and wife at the time of
11 its second March 17, 2010 conversation with Hartwell, it never
12 called Hartwell again and removed her name and number from its
13 contact list for Plaintiff's file.

14    Although Plaintiff argues that a debt collector's mistaken
15 belief as to the propriety of its actions is not sufficient to
16 preclude FDCPA liability, essentially making the FDCPA a strict
17 liability statute (citing Spencer v. Hendersen-Webb, Inc.,
18 81 F. Supp. 2d 582 (D. Md. 1999)), the FDCPA does contain a
19 provision insulating a collector from liability if "the violation
20 was not intentional and resulted from a bona fide error
21 notwithstanding the maintenance of procedures reasonably adapted
22 to avoid any such error."  15 U.S.C. § 1692k(D).  Rash Curtis
23 argues that this safe harbor provision protects it from liability
24 given the information it obtained both from Hartwell and from
25 Plaintiff's credit report, as well as the fact that no additional
26 procedures could have protected against error given those
27 representations.
28 ///

The problem with the position of both parties is that factual disputes abound as to what in fact occurred. Rash Curtis claims that Jherica Hartwell told its employee on September 18, 2009 that she was married to Plaintiff; Hartwell herself denies, both by way of deposition and through her declaration, that she made any such statement. Hartwell Dep., 37:18-38:3; Hartwell Decl., ¶¶ 3, 7. Obviously, whether or not Hartwell made a representation as to her marital status is critical in determining whether Rash Curtis had a good faith belief as to whether she was Plaintiff's wife.

Plaintiff's own version of events presents similar conflicts. In his declaration, he states that he specifically told Rash Curtis that Hartwell "had nothing to do with his debt ... and was not my wife." Pl.'s Decl., ¶ 4. He goes on to state that despite requesting that Rash Curtis "never call her since she was not my wife" the company continued to call and harass her at work. Id. at ¶¶ 4,5.[2]

In sum, then, triable issues of fact preclude summary adjudication as to Plaintiff's claims of impermissible third party contacts in violation of 15 U.S.C. § 1692c(b).

///

---

[2] The Court notes that Rash Curtis has requested that the Court disregard the declarations of both Plaintiff and Jherica Hartwell on grounds that they impermissibly diverge from the sworn version of events they provided in their deposition. Although certain discrepancies do exist, they are not sufficient to preclude consideration of the declarations in their entirety as Rash Curtis requests. The declarations, for example, appear to conflate certain contacts, and other issues were not definitely established at the time of the depositions to make the declarations plainly contradictory. Moreover, and in any event, triable issues of fact preclude summary adjudication here even were the declarations to be disregarded.

12

### 3. Impermissibly Calling Plaintiff at His Place of Employment or at Another Place or Time Known to Be Inconvenient.

15 U.S.C. § 1692c(a)(1) prohibits a debt collector from contacting the debtor at an "unusual time or place or a time or place known or which should be known to be inconvenient."  In arguing for liability under this provision of the FDCPA, Plaintiff argues that while all calls were made to his cell phone, "some calls were made when he was at work" and that Rash Curtis continued to call Plaintiff despite the fact that he had asked them to stop doing so.  Pl.'s Opp'n, 8:4-19.

Although Plaintiff claims that he made Defendant aware "on multiple occasions not to call him at certain times," the portion of his deposition cited to support that claim states only that he "told them to quit calling me."  Pl.'s Dep., 21:14-15. Additionally, the fact that Plaintiff may have been at work when some calls were placed to his cell phone does not give rise to liability under § 1692c(a)(1) on grounds that Rash Curtis should have known that the calls were inconvenient.  First, as indicated above, Plaintiff concedes that Rash Curtis never used a work number and only called his cell phone.  Id. at 20:22-23. Secondly, Plaintiff further admits that he never told Rash Curtis his work schedule, which varied depending on the day and week, and, consequently, it would have not known whether Plaintiff was at work or not.  Id. at 25:16-26:13.  No evidence whatsoever has been presented to suggest that Rash Curtis knew or should have known it was calling Plaintiff on his cell phone at inconvenient times or places.

13

1    Therefore, summary adjudication as to Plaintiff's claim in that

2    regard must be granted.

3

4                 **4.   Impermissibly Making False Threats in Attempting**
                       **to Collect on a Debt.**

5

6        The FDCPA prohibits a "threat to take any legal action that

7    cannot legally be taken or that is not intended to be taken", and

8    deems such threat to constitute a "false, deceptive, or

9    misleading representation" in violation of the statute.

10   15 U.S.C. § 1692e(5).  Similarly, subdivision (e)(4) of the

11   statute prohibits "the representation or implication that

12   nonpayment of any debt will result in the arrest or imprisonment

13   of any person or the seizure, garnishment, attachment or sale of

14   any property or wages of any person unless such action is lawful

15   and the debt collector or creditor intends to take such action."

16   California's Rosenthal Act tracks the above enumerated federal

17   provisions at California Civil Code § 1788.13(j) (prohibiting

18   false representations as to the institution of legal proceedings)

19   and § 1788.10(e) (threatening garnishment of wages prohibited

20   where such action is not contemplated or permitted by law).

21       Defendant argues that it made no false threats actionable

22   under either the FDCPA or the Rosenthal Act.  It appears

23   undisputed that Rash Curtis did not threaten to have Plaintiff

24   arrested or take his property.  Rash Curtis also correctly points

25   out that it did take legal action against Plaintiff as a result

26   of the debt and in fact obtained a judgment against him.  That

27   judgment could permit garnishment proceedings against Plaintiff.

28   ///

                                   14

Plaintiff has therefore failed to state a viable claim against either the FDCPA, at 15 U.S.C. § 1692e(4) or the Rosenthal Act, at California Civil Code § 1788(10)(e).

Plaintiff also contends, however, the claim that Rash Curtis stated it had sued his employer, Metro PCS, concerning Plaintiff's own debt. Pl.'s Dep. 27:5-14; Pl.'s Compl., ¶ 5(i)-(j). Plaintiff alleges that representation was false, and there is no evidence that Rash Curtis took any action against Metro PCS or had the ability to do so. Consequently, taking Plaintiff's allegations as true, as the Court must do for purposes of summary judgment (<u>Anderson</u>, <u>supra</u>, 477 U.S. at 255), Plaintiff may be able to state a viable claim against Rash Curtis for false representations under the FDCPA and Rosenthal Act at 15 U.S.C. § 1692e(5) and California Civil Code § 1788.13(j). Summary adjudication as to those false representation claims consequently cannot be had.

### 5.   Failure to Send Written Notice of Debt as Required by the Fdcpa.

The FDCPA requires debt collectors to provide consumers with a so-called "validation notice" pursuant to 15 U.S.C. § 1692g informing consumers that their alleged debt will be assumed to be valid unless the consumer disputes the validity of the debt within 30 days. <u>See</u> 15 U.S.C. § 1692g(a)(3). While Plaintiff argued in his complaint that he did not receive the required validation notice (<u>see</u> Compl., ¶ 5(m)), Plaintiff's opposition indicates that he concedes the § 1692g claim "because Plaintiff did receive a letter from Defendant." Pl.'s Opp'n, 10:9-10.

1  Plaintiff consequently offers no opposition to Defendant's

2  summary adjudication request and that request will be granted.

3

4      **B.    Invasion of Privacy.**

5

6      In addition to the statutory claims discussed above,

7  Plaintiff also asserts a common law claim for invasion of privacy

8  in Count III of his Complaint.  Plaintiff argues that the FDCPA

9  and Rosenthal Act claims he identifies "constitute an intentional

10 intrusion into Plaintiff's private places and into private

11 matters of Plaintiff's life, conducted in a manner highly

12 offensive to a reasonable person."  Pl.'s Compl., ¶ 6.  According

13 to Plaintiff, his subjective expectation of privacy under the

14 circumstances was objectively reasonable.  Id.  Plaintiff further

15 contends that Defendant's disclosure of the debt to third parties

16 amounted to a "public disclosure of a private fact not of

17 legitimate public concern," and was "highly offensive to a

18 reasonable person."  Id. at ¶ 7.

19     Plaintiff's allegations track the prerequisites of a viable

20 invasion of privacy claim, which requires an intentional

21 intrusion into private affairs in a manner highly offensive to a

22 reasonable person.  Shulman v. Group W Productions, Inc.,

23 18 Cal. 4th 200, 231 (1998).  Defendant nonetheless argues, in

24 this instance, that collection calls to Plaintiff's cell phone,

25 where he had caller identification and was able to (and did)

26 ignore the calls if he chose to do so, were not a highly

27 offensive intrusion into Plaintiff's private affairs sufficient

28 to support an invasion of privacy claim.

16

Defendant also points out that it was assigned a debt owed by

Plaintiff for collection and that debt collection, and calls made

in an attempt to collect a debt, are not illegal.

In opposition, Plaintiff does little more than argue that

whether or not Defendant's debt collection activities were

sufficiently offensive is a determination that must be left to

the trier of fact.  The Court disagrees.  In order to survive

summary judgment, Plaintiff must identify a genuine issue of

material fact, as well as some evidence upon which a jury could

find in his favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, <u>supra</u>,

477 U.S. at 248, 251-52.  Here, the facts as alleged by Plaintiff

simply do not meet that fundamental minimum.  For all intents and

purposes, Plaintiff has shown little more in this matter other

than that Rash Curtis called him, albeit on numerous occasions,

in attempting to collect a debt, under circumstances where

Plaintiff was free to disregard the calls and not even answer

since he was able to ascertain that it was Rash Curtis attempting

to contact him.  That is plainly insufficient to state an

actionable invasion of privacy claim.

With respect to public disclosures to third parties as

supporting an invasion of privacy claim, as indicated above

Plaintiff concedes that the only third party at issue is his

girlfriend, Jherica Hartwell.  Plaintiff's allegations with

respect to disclosures made to Jherica Hartwell, even if

sufficient for purposes of potential liability under FDCPA, are

insufficient to establish viable invasion of privacy claim.

///

///

1   The Court does not believe that any reasonable jury could find

2   that disclosure to Hartwell alone, an individual with whom

3   Plaintiff resided at the time of the alleged disclosures (the

4   couple had a child together) and later married, constituted a

5   "public disclosure" upon which in invasion of privacy could be

6   predicated.  Moreover, the gravamen of the "public disclosure"

7   component of the invasion of privacy tort is that disclosure must

8   be to the public in general or to a large group of people, not to

9   a single individual like Hartwell.  See, e.g., Porten v.

10  University of San Francisco, 64 Cal. App. 3d 825, 828 (1976).

11  Either way, Plaintiff's invasion of privacy claim fails as a

12  public disclosure.  Defendant is entitled to summary adjudication

13  as to Plaintiff's invasion of privacy claim.

14

15                              **CONCLUSION**

16

17       For the reasons set forth above, Defendant's Motion for

18  Summary Adjudication (Docket No. 14) is GRANTED in part and

19  DENIED in part.[3]  The Motion is GRANTED with respect to

20  Plaintiff's claims under the FDCPA at 15 U.S.C. §§ 1692b,

21  1692c(a)(1), 1692e(4) and 1692g, but DENIED as to §§ 1692c(b) and

22  1692e(5).  Defendant's request for summary adjudication as to

23  Plaintiff's claims under the Rosenthal Act is GRANTED as to

24  California Civil Code § 1788.10(e) but DENIED as to § 1788.13(j).

25  ///

26

27       [3] Because oral argument would not be of material assistance,

28  this matter was deemed suitable for decision without oral
    argument.  E.D. Local Rule 230(g).

1  Defendant's request for summary adjudication as to Plaintiff's

2  invasion of privacy claim is GRANTED.

3      IT IS SO ORDERED.

4
   Dated: May 9, 2012

5

6

7                              _____
                               MORRISON C. ENGLAND, JR.
8                              UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   19